IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

GEORGE HAWKINS, JR.,
     Plaintiff,

v.                                   Civil No. 3:24cv251 (DJN)

ROBIN ALLEN,
DR. KNIGHT,
     Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on Robin Allen's ("Allen") and Dr. Knight's ("Knight" and, together with Allen, "Defendants") Motion for Summary Judgment, (ECF No. 8 ("Motion")), and accompanying Memorandum of Law, (ECF No. 9 ("Mem.")). Defendants move to dismiss Plaintiff George Hawkins, Jr.'s ("Hawkins" or "Plaintiff") *Pro Se* Complaint, (ECF No. 1 ("Compl.")), wherein he brings one count alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment after delaying him timely dental care while he was imprisoned. (*Id.* ¶¶47–59.) Plaintiff has filed his Response, (ECF No. 12), and Defendants have failed to file a Reply, rendering the matter ripe for judicial review. For the reasons that follow, the Court will DENY IN PART and GRANT IN PART Defendants' Motion for Summary Judgment, (ECF No. 8).

## I.    BACKGROUND

Plaintiff's *Pro Se* Complaint stems from his time while imprisoned at the Greensville Correctional Center ("GCC"). (Compl. ¶ 1.) The events related to the instant Complaint began in August of 2021, when Plaintiff first submitted a request for a routine dental examination, which he was provided later that month. (*Id.* Exh. 1 ("Hawkins Aff.") at 1.) At that

examination, he received notice that he had two small cavities that required routine fillings. (*Id.*) Plaintiff then saw a dentist for what is described as a "toothache/eval" on November 5, 2021, when he expressed that his teeth were in pain. (Mem. Exh. 3 at 1.) At that time, the dentist — "Dr. M.", who is not a party to this action, but was employed by GCC[1] — noted that teeth Nos. 19 and 30,[2] both of which are molars, had "cavity close to pulp," "tooth impaction" and "subgingival decay," and therefore required "a special restorative material that can tolerate saliva." (*Id.*) The provider notes that Plaintiff would "be scheduled for restoration," but no follow-up appointment was set up at that time. (*Id.*) Neither the provider notes nor Defendants' briefings provides an explanation for the failure to schedule a follow-up appointment. This complete failure to schedule a follow-up appointment appears to be in contravention of GCC standard operating practice ("SOP"), as SOP notes that fillings are considered to be "*presently dentally necessary,*" which contemplates resolving the issue within a reasonable time frame. SOP 720.6(D)(3)(c); (Compl. ¶ 45). Even if Plaintiff's dental condition required outside appointments, SOP notes that the dental department's goal is to schedule such treatment "within 90 days." SOP 720.6(F)(2)(c).

However, nine months passed without GCC planning any follow-up appointments for Plaintiff's condition. Thus, on July 22, 2022, nearly one year after Plaintiff was first informed of his tooth decay, he followed up on the need to have his cavities filled by filing an informal

---

[1]    It is unclear who "Dr. M." is. No party describes their role, but both parties agree that this dentist saw Plaintiff on November 5, 2021, and confirmed that teeth Nos. 19 and 30 were experiencing decay that required medical intervention.

[2]    Teeth Nos. 19 and 30 are the first permanent molars that reside on the lower jaw. They are on opposite sides of (and mirror) each other. DAYO DENTAL, *Teeth Numbers and Names: A First Step in Understanding Your Treatment Plan*, (last visited July 25, 2024), https://www.dayodental.com/teeth-numbers-and-teeth-names/ [https://perma.cc/UQT8-AF2M].

2

complaint with GCC, wherein he noted that he was "seen almost 1 year ago and [] was informed that [he] needed to have two (2) filings put in as soon as possible." (Compl. ¶ 7; Compl. Exh. A at 1.)  Three weeks later, on August 12, 2022, Defendant Allen wrote back to Plaintiff and informed him that "you will be scheduled for your dental appointment to have your cavities addressed," and noted that the reason for the 12-month delay constituted "Covid shut down in the clinic." (Compl. Exh. A at 1.)  No further explanation regarding the effect that COVID-19 had on Defendants' ability to render routine dental care such as fillings has been provided.

On August 17, 2022, Plaintiff finally saw a dentist — Defendant Knight — to fill his cavities. (Compl. ¶ 12; Compl. Exh. D.)  What occurred at that appointment is the matter of dispute between the parties.  Plaintiff states that Defendant Knight informed him that "he could not guarantee [Plaintiff] safe nor adequate treatment" and that there "was a good chance that he would 'mess [Plaintiff] up.'" (Compl. Exh. D at 1.)  Plaintiff's Complaint also clearly notes that he was maintaining his request to have his teeth fixed, but it appears that Defendant Knight's warnings about his inability do so safely scared Plaintiff away from accepting treatment from him. (*Id.*; *see also* Compl. Exh. H (wherein Plaintiff requested "to be seen by a dentist whom can <u>successfully</u> complete [his] routine fillings.")).  This version of the appointment was memorialized by Plaintiff in a written complaint addressed to the GCC ombudsman, which is dated for the same day that the appointment with Defendant Knight occurred — August 17, 2022. (*Id.*)

Defendants provide a different version of that appointment.  They claim that Plaintiff was informed by Defendant Knight that fillings had to be done in-house at GCC, as they constitute a routine procedure, whereas Plaintiff's impacted wisdom teeth had to be fixed by an oral surgeon. (*Id.*)  Given this, Plaintiff allegedly rejected dental care at that time and informed Defendant

3

Knight that he would wait until he was released to receive dental care. (*Id.*) Defendants' version of the events is supported by Defendant Knight's sworn affidavit and the sworn affidavit of a dental assistant who was assisting him on August 17, 2022, Linda Winfield, who is not a party to this suit. (Mem. at 2 ¶ 4; Mem. Exh. 1 ("Knight Aff."); Mem. Exh. 4 ("Winfield Aff.").) However, Defendants do not provide a Health Service Consent to Treatment Refusal Form, which is a form that GCC's SOP requires to be filled out whenever an inmate refuses medical care.[3] *See* SOP 720.1(L)(2) (noting that an inmate's "refusal to submit to recommended treatment . . . will be documented on a *Health Services Treatment Consent/Refusal* . . . [and] a medical staff member will witness the inmate's . . . signature [thereon].").

On August 31, 2022, Plaintiff filed another grievance letter. (Compl. Exh. E.) There, he restated his version of the August 17, 2022 appointment with Defendant Knight, during which he was apparently told by Defendant Knight that he was not able to safely fix Plaintiff's cavities. (*Id.*) As a remedy, Plaintiff requested that he be provided access to safe and adequate treatment. (*Id.*) In a subsequent grievance letter (filed on September 1, 2022) regarding the August 17, 2022 appointment with Defendant Knight, Plaintiff again requested that he either be sent "off campus in order to receive the proper dental care, and/or, . . . to be afforded the opportunity to receive better treatment here at Greensville Correctional Center." (Compl. Exh. F.) And yet again, in another grievance letter filed on September 21, 2022, Plaintiff relayed that he was "in constant pain" and was suffering from bleeding gums and a swollen mouth. (Compl. Exh. J.) He noted that "all [he] want[ed] [was] safe access to dental care." (*Id.*)

---

[3]     VIRGINIA DEP'T CORRECTIONS, HEALTH SERVICES OPERATING PROCEDURE 720.6, (last visited July 26, 2024), https://vadoc.virginia.gov/files/operating-procedures/700/vadoc-op-720-6.pdf [https://perma.cc/9HGZ-DYVD].

On September 28, 2022, Plaintiff had another appointment with Defendant Knight, despite having noted that he preferred to see a different dentist at GCC. (Compl. Exh. L.) During that appointment, Plaintiff told Defendant Knight that many inmates had been left in worse condition after he worked on them and that, as such, Plaintiff maintained that he was still fearful of having Defendant Knight operate on him.[4] (*Id.*) Plaintiff then again requested another dentist and was dismissed from that appointment without having any treatment or medication provided to him. (*Id.*) On October 6, 2022, Plaintiff was informed by GCC that he would be scheduled with a different dentist, Dr. Holland, to determine his treatment needs. (*Id.*)

On November 15, 2022, Plaintiff was seen by Dr. Holland, another dentist at GCC. At that time, Plaintiff's teeth were so degraded as to be unsalvageable. Consequently, Dr. Holland pulled tooth No. 30 and informed Plaintiff that he would be scheduled to have tooth No. 19 extracted in the future. (Compl. ¶ 27.) Six weeks later, on January 3, 2023, Plaintiff wrote another grievance requesting that he receive care on tooth No. 19, as he had still not been scheduled to have it removed. (*Id.* ¶ 28; Compl. Exh. Q.) He was then seen by Dr. Holland on January 31, 2023, during which time tooth No. 19 was extracted. (Compl. ¶ 33.)

In summation, the undisputed facts of this case for purposes of summary judgment can be distilled as follows. Plaintiff was told in August of 2021 by Dr. Holland that he had two cavities, which was confirmed and reiterated in November of 2021 by another provider, "Dr. M." (Compl. Exh. 1; Mem. Exh. 1.) "Dr. M" wrote in his notes that Plaintiff would be scheduled for

---

[4]     Plaintiff provides two sworn affidavits from inmates upon whom Defendant Knight had operated and who were left in markedly worse conditions post-operation. In one, Defendant Knight allegedly botched a filling, which ultimately broke and caused the tooth to become infected. *See* (Compl. Exh. N, Affidavit of Ronald Wilson). In a second, Defendant Knight apparently failed to numb the tooth that he was operating on when he placed a filling and, only three days after having the filling inserted, it fell out, requiring the patient to schedule an emergency follow-up procedure. *See* (Compl. Exh. O, Affidavit of Gregory Walton).

a follow-up appointment to address his dental needs, but no follow-up was ever scheduled. (Mem. Exh. 1.) Plaintiff then followed-up on his condition on July 22, 2022, where he noted that he was in pain and had been diagnosed with cavities nearly a year earlier. (Compl. ¶ 7; Compl. Exh. A at 1.) Three weeks later, he was seen by Defendant Knight to address cavities. (Compl. Exh. A at 1.) At that appointment, Defendant Knight allegedly made comments regarding his own capabilities as a dentist and his ability to safely resolve Plaintiff's dental needs. (Compl. Exh. D at 1.)

Between those comments and stories from fellow inmates that suggest that Defendant Knight had provided deficient care in the past, Plaintiff states that he felt enough fear to refuse care from Defendant Knight and thus requested a different dentist. (Compl. Exhs. D, H.) Ultimately, this request was granted, and in November of 2022, Dr. Holland, also a dentist, informed Plaintiff that his teeth had degraded to such an extent that they were no longer salvageable. (Compl. ¶ 27.) One molar was thus removed in November of 2022. (*Id.*) The second molar was not removed until January of 2023, a removal that occurred only *after* Plaintiff filed a grievance with GCC requesting that the jail dentist address the concerns presented by his second tooth. (*Id.* ¶ 33.) This suit, alleging deliberate indifference in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, followed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry at the summary judgment stage analyzes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251–52 (1986).  When reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party — Plaintiff.  *Id.* at 255.  At this stage, the Court cannot weigh the evidence; it must simply determine whether a genuine issue exists for trial.  *Greater Balt. Ctr. For Pregnancy Concerns v. Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 249).

Once the movant properly makes and supports a motion for summary judgment, the burden shifts to the opposing party to show that a genuine dispute of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the standard requires "that there be no *genuine* issue of *material* fact."  *Liberty Lobby, Inc.*, 477 U.S. at 247.  A genuine issue of material fact arises only when the evidence, viewed in the light most favorable to the nonmoving party, sufficiently allows a reasonable jury to return a verdict in that party's favor.  *Id.* at 248.  To defeat an otherwise properly supported motion for summary judgment, the non-moving party must rely on more than conclusory allegations or the "mere existence of a scintilla of evidence."  *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted).

## III.   DISCUSSION

Plaintiff brings one count against both Defendants in their personal and official capacities under 42 U.S.C. § 1983.  He alleges that Defendants were so deliberately indifferent to his dental requirements that they violated his Eighth Amendment right to be free from cruel and unusual

7

punishment.[5]  Given that Plaintiff did ultimately receive *some* medical care, the Court construes Plaintiff's to be one for a delay in medical care, rather than a denial thereof.

A claim for a delay in medical care requires that Plaintiff plausibly plead both objective and subjective elements. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Objectively, he must show that the medical need for which he sought treatment was sufficiently serious. *Formica v. Aylor*, 739 F. App'x 745, 754–55 (4th Cir. 2018).  Moreover, a delay in medical care claim also requires that Plaintiff demonstrate that "the delay results in some substantial harm to [himself], such as a marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain." *Id.* at 755.  And subjectively, he "must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Without satisfying both elements, a claim alleging that a delay in medical care violated a plaintiff's Eighth Amendment right fails.  To begin, the Court first addresses what period of time constitutes the period of delay for Plaintiff's claim, and then turns to considering the objective and subjective elements of Plaintiff's Eighth Amendment claim.

### A.  Relevant Period of Delay

Assessing the merits of a claim suggesting that a delay in medical care violated a prisoner's Eighth Amendment right begins with outlining the contours of the relevant period of delay.  Here, it is uncontroverted that Plaintiff was first informed in August of 2021 by a dentist at GCC that he had two cavities.  (ECF No. 12 ("Pl. Resp.") at 1.)  It is likewise uncontested that

---

[5]      Because Plaintiff only brings a claim for damages, the official capacity claims brought against Defendants fail as a matter of law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

Plaintiff was seen again by a dentist in November of 2021, but was not actually set up for an appointment to address his dental problems until August 17, 2022. And it was not until November of 2022 that Plaintiff in fact received dental care designed to address the cavities that a dentist at GCC recognized in August of 2021.

Complicating this inquiry stands the fact that Plaintiff, by his own admission, seemingly rejected medical care on August 17, 2022. For instance, he notes repeatedly that he did not want Defendant Knight to operate on him, as Defendant Knight had allegedly told Plaintiff that he lacked the skills to do the procedure safely and Plaintiff had heard stories from other inmates of Defendant Knight allegedly being uncapable, as he left them worse off after he operated on them. (Compl. ¶¶ 13, 14, 16, 19, 23.) And, as Defendants note, when an inmate rejects medical care or prefers to see a different provider, an Eighth Amendment claim fails. *Cooper v. Williams*, 2021 WL 3779633, at *12 (E.D. Va. Aug. 24, 2021). The wisdom inherent to that general principle is self-evident, as it ensures that prisoners cannot manufacture Eighth Amendment claims by rejecting care or otherwise proving obstreperous while imprisoned. But its application to this case is more nuanced than Defendants suggest, because Plaintiff did not reject medical care or note his preference for a different provider until August of 2022, a full year after he was initially diagnosed with two cavities, and at least nine months after his last dental appointment, where the dentist noted the deteriorating condition of Plaintiff's two molars and the expectancy of a follow-up appointment. (Mem. Exh. 3.) Thus, Defendants' myopic focus on the period of time after which Plaintiff appears to have denied medical care completely misses the mark, as it ignores the *twelve months* that Plaintiff waited before rebuffing Defendant Knight, a point that Plaintiff clearly makes in both his Complaint and his Response. *See* (Compl.

9

¶ 60.B (noting Defendants failure to conduct "a follow up examination for an entire year"); Pl. Resp. ¶ 16 (suggesting that Defendants let his "degenerative condition persist for a year").)

When the Fourth Circuit has considered delay-of-care claims, the relevant period of delay begins when the medical condition was first reported to or acknowledged by prison medical staff. *See Formica*, 739 F. App'x at 756 ("[Plaintiff's] saga with the Molar began in January 2014 when he reported to Nurse Pitts that he was in pain because of a missing filling in his molar."); *see also Alexander v. Blackman*, 2020 WL 758959, at *2–3 (W.D. Va. Feb. 14, 2020) (finding that the period of delay began when the plaintiff was first scheduled to see a dentist, but was denied access to that appointment); *Wilder v. Krebs*, 2018 WL 4020211, at *3 (D. S.C. Aug. 23, 2018) (finding that the plaintiff could not claim damages for the period of time after he declined treatment and that the relevant period of delay began when the jail dentist was aware of the plaintiff's dental condition). Thus, at the very least, the relevant period of delay for Plaintiff's delay of care claim begins in August of 2021, when he was first diagnosed, and extends until August of 2022, when he first rejected medical care. This 12-month period therefore forms the minimum length of delay for the Court's assessment of Plaintiff's delay-in-care claim.

At this stage, however, the Court must view the evidence in the light most favorable to Plaintiff, as the non-moving party, and liberally construe a *pro se* party's complaint. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Considering these principles, the Court could conclude that the period of delay extends beyond August of 2022. If the Court accepts as true that that Defendant Knight told Plaintiff that he could not safely operate on his teeth in August of 2022, then the fact pattern would not reveal Plaintiff rejecting medical care, but instead would involve Defendant Knight effectively refusing to administer such care. (Compl. ¶ 12; Compl.

10

Exh. D.)  Defendants fail to contest that Defendant Knight uttered these words or expressed that

sentiment, as their affidavits regarding the August 2022 appointment relate merely that "Plaintiff

indicated [] that he wanted to be sent to an outside dentist for treatment." (Mem. Exh. 1; Mem.

Exh. 2.)  Crucially, they do not engage with *why* Plaintiff wanted to see a different dentist or

address Plaintiff's fear of Defendant Knight.

        In fact, when viewing the evidence in the light most favorable to Plaintiff, his version of

the events stands plausible.  This is supported by the contemporaneity between the August 2022

appointment and the grievance letter regarding that appointment, (Compl. Exh. D), the

consistency in Plaintiff's description of that appointment, and, in light of Defendants' omission

regarding why Plaintiff wanted to see another provider, also entirely consistent with their version

of the events.  If Plaintiff's version is plausible, then it would be entirely reasonable to decline

treatment from Defendant Knight.  Indeed, if Defendant Knight said he could not safely provide

the required treatment and failed to schedule Plaintiff with a provider who could safely

administer the treatment, that itself would qualify as evidence of deliberate indifference, as it

would be tantamount not to Plaintiff rejecting care, but to Defendant Knight refusing to

administer it despite knowing its necessity. *See Estelle*, 429 U.S. 97 at 104–05 (finding that

interference with treatment can constitute deliberate indifference); *Wilder*, 2018 WL 4020211, at

*2 (finding that dentist's failure to schedule follow-up visit for patient could constitute deliberate

indifference).

        Thus, the Court could plausibly construe the period of delay to extend all the way until

November of 2022, when Plaintiff saw Dr. Holland, who was forced to extract Defendant's tooth

given how much it had degraded since he was first advised that he had cavities in August of

2021.  But because the Court's deliberate indifference analysis does not depend on the delay

11

extending until November of 2022, the Court adopts August of 2022 as the relevant end point.
Although Defendants suggest that "it is indisputable that [Plaintiff] was responsible for the
delay," (Mem. at 5), such could not be further from the reality presented by the record.

### B. Deliberate Indifference — Objective Element

The first threshold that Plaintiff must demonstrate requires that the condition that
received belated treatment constituted one capable of being deemed objectively serious. Here,
Plaintiff's condition unquestionably qualifies as one such condition. As the Fourth Circuit and
its sister circuits have recognized, a tooth cavity presents an objectively serious medical
condition, because "left untreated, [it poses] an excessive risk of further significant injury and
unnecessary and wanton infliction of pain." *Formica*, 739 F. App'x at 756[6]; *see also Harrison v.
Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (remarking that an untreated cavity is objectively
serious, as it is "likely to produce agony and to require more invasive treatments"); *Dobbey v.
Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) (describing mature cavities as "often
painful" and dangerous, and therefore objectively serious). In fact, as Plaintiff points out,
Defendants' own policies confirm this conclusion. (Compl. ¶ 45.) When Plaintiff was seen in
November of 2021, his dental condition was diagnosed as "Class 2." (Mem. Exh. 3 at 1.)
According to GCC's own SOP, conditions that qualify as "Class 2" are considered "presently

---

[6]     *Formica* — a six-year-old case — constitutes completely on-point precedent from the
circuit within which the undersigned sits. 739 F. App'x 745. While Plaintiff, a *pro se* litigant
without formal legal education, cites it in his pleadings, (Compl. ¶ 52), the case is curiously
absent from Defendants' brief. Counsel for Defendants would be wise to review the Virginia
Rules of Professional Conduct, which require lawyers to "recognize the existence of pertinent
legal authorities." Rule 3.3 — Candor Toward the Tribunal, Va. R. Prof. Conduct (last visited
July 29, 2024), https://vsb.org/Site/Site/about/rules-regulations/rpc-part6-sec2.aspx. Its omission
from their brief is inexcusable.

dentally necessary," because if they "are not treated, the inmate would be at a significant risk of further serious deterioration of the inmate's condition."[7] (Compl. ¶ 45); SOP 720.6(V)(D)(3)(c).

The second aspect of the objective prong when reviewing a delay-in-care claim requires that the delay cause some "substantial harm" to the patient. *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008). "Substantial harm" can be demonstrated by the delay causing a "marked exacerbation" of Plaintiff's condition. *Formica*, 739 F. App'x at 755. It can likewise be shown simply by demonstrating that the delay "unnecessarily prolonged an inmate's pain." *Id.* Here, Plaintiff's Complaint easily satisfies both avenues.

When Plaintiff first saw a dentist — Dr. Holland — in August of 2021, he was told that he had two fillings that needed to be filled as soon as possible. (Mem. Exh. 1.) This much was also true months later, in November of 2021, when he saw "Dr. M." (Mem. Exh. 3 at 1.) At that appointment, Plaintiff noted that his teeth were in pain, and he was then diagnosed with percussion, cavities close to the pulp and food impaction in the two afflicted molars. (Mem. Exh. 3 at 1.) Plaintiff maintained that his teeth were still in pain in August of 2022, when he was finally provided a follow-up appointment for his year-old cavities. (Compl. Exhs. C and D.) Given the routine nature of filling cavities, the one-year delay between GCC learning about Plaintiff's condition and when he was eventually seen by a dentist to resolve the issue constitutes a period of time in which Plaintiff's pain was unnecessarily prolonged. This is doubly so given that no alternative medical arrangements were considered or provided, such as pain medication or temporary fillings. Plaintiff also plausibly alleges that he experienced a "marked exacerbation" of his condition. While the record does not reflect the state of Plaintiff's molars in

---

[7]    VIRGINIA DEP'T CORRECTIONS, HEALTH SERVICES OPERATING PROCEDURE 720.6, (last visited July 26, 2024), https://vadoc.virginia.gov/files/operating-procedures/700/vadoc-op-720-6.pdf [https://perma.cc/K2SZ-3ZGN].

13

August of 2022, when he was finally seen by a dentist, it is undisputed that by November of 2022, his teeth were unsalvageable. (Mem. at 2, ¶ 6.)  From this, the Court can infer that, as of August 2022, there had been a marked deterioration in his teeth that satisfies the requirement that the delay caused him substantial harm. *Accord Formica*, 739 F. App'x at 755 (collecting cases).

Thus, while Plaintiff need only show that an objectively serious medical condition either unnecessarily prolonged his pain or caused a marked exacerbation of his condition, he plausibly demonstrates both.  As such, his delay-of-care claim clears the objective prong of the deliberate indifference analysis, and the Court now turns to assessing whether he has plausibly plead the subjective element that is likewise required.

### C. Deliberate Indifference — Subjective Element

The second element of a delay-in-care claim requires showing that Defendants deliberately delayed or interfered with Plaintiff's medical care to a degree that demonstrates they disregarded the excessive risk that Plaintiff's untreated cavities posed to his health. *Formica*, 739 F. App'x at 757.  This inquiry is fact-bound, "subject to demonstration in the usual ways, including from circumstantial evidence." *Farmer*, 511 U.S. at 842.  Where the risks of delay are obvious, the Court may conclude that a defendant knew of the risk based on that fact alone. *Id.* At bottom, "when a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action." *Formica*, 739 F. App'x at 757.

On this case's facts — which involve teeth that began as reparable and capable of being treated with routine fillings but devolved into being so degraded as to require extraction — the Fourth Circuit has found claims of deliberate indifference to succeed.  For instance, in *Formica*, when a dental nurse let eight months pass after becoming aware of a prisoner's cavity before scheduling an operation to address the cavity, the Fourth Circuit reversed a grant of summary

14

judgment. 739 F. App'x at 758; *cf. Chavez v. Bailey*, 2020 WL 2751899, at *11 (W.D. Va. May 27, 2020) (dismissing claim of prisoner who was seen and treated for complaints of dental pain less than a month after his initial complaint and approximately one week after his second complaint, because he had not alleged a sufficient delay in treatment to state an Eighth Amendment claim). When the procedure is as routine as the one that Plaintiff initially required — two fillings — the length of delay present here — one year — qualifies as nothing short of intolerable. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (recognizing that whether a length of delay "is tolerable depends on the seriousness of the condition and the ease of providing treatment."). This is particularly the case when, as here, the period of delay contravenes its own SOP. *See* SOP 720.6(F)(2)(c) (noting that conditions requiring appointments should be scheduled "within 90 days.").

In Plaintiff's case, he experienced a 12-month delay between being diagnosed with two cavities and being scheduled for a routine operation to address those cavities, and even had an appointment in the interim that also recognized the necessity and urgency of fixing his teeth. On those facts, deliberate indifference exists if Defendants have no justification for their delay, as courts have found that delays of the length experienced by Plaintiff for the condition that he needed resolved constitute as much. Here, no such justification exists. Indeed, the only potential justification that is even hinted at in the pleadings and their exhibits relates to COVID-19. However, Defendants' Motion for Summary Judgment completely omits addressing how COVID-19 affected their ability to provide Plaintiff with routine cavity fillings. To the extent there exists any reference to COVID-19 in the record before the Court, it comes in the form of an exhibit submitted by Plaintiff, wherein Defendant Allen wrote to Plaintiff after he filed a grievance letter regarding his delayed care that the reason for Plaintiff's delay was due to

"COVID shut downs in the clinic." (Compl. Exh. A at 1.)  Defendants provide no evidence of COVID having affected their operations, and therefore the Court concludes that this issue raises a genuine issue of material fact such that a reasonable jury could find for Plaintiff on the subjective-element prong.

Consequently, the Court concludes that Plaintiff has introduced sufficient evidence to plausibly demonstrate a violation of his Eighth Amendment right, as an unjustified 12-month delay between being diagnosed with multiple cavities requiring treatment and ultimately receiving an appointment to fill those cavities, constitutes deliberate indifference. *Accord Formica*, 739 F. App'x at 758; *Hoeft v. Menos*, 347 F. App'x 225, 228 (7th Cir. 2009) (holding that six-month delay in filling cavity can constitute deliberate indifference); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (overturning grant of summary judgment when defendants delayed treating loose and infected teeth for six weeks); *Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (noting that courts in the Second Circuit routinely find "a one-year delay in treating a cavity" as "evidence [of] deliberate indifference").  However, the crux of this issue boils down to whether either of the named Defendants themselves held the requisite level of subjective awareness that can render them liable for the constitutional violation that Plaintiff has endured.

Defendants all but fail to argue why Defendant Knight apparently lacked the requisite awareness such that he cannot be liable for Plaintiff's delay in medical care.  Instead, Knight takes for granted that he cannot be held liable for the delay in providing Plaintiff reasonable medical care for a reason unbeknownst to the Court.  Despite Defendants' abject failure to address this issue, the Court cannot infer — at this time — that Knight had the requisite level of awareness based on the record before it.  Plaintiff does not allege, for instance, that Knight had

16

any involvement in scheduling Plaintiff's care. *See Formica*, 739 F. App'x at 757–58 (finding

subjective prong satisfied when defendant "was closely involved in [the plaintiff's] dental

treatment process" and failed to schedule a dental appointment to address a decaying molar).

Moreover, while Plaintiff did have a dentist's appointment in November of 2021, it remains

unclear whether that dentist was Knight or another dentist in the facility, as the only identifying

mark references a "Dr. M," and an illegible provider signature. (Mem. Exh. 3 at 1.) However, if

Knight did know or should have known of Plaintiff's cavities in November of 2021 (either due to

being the provider or being informed by "Dr. M" of Plaintiff's condition) and had some role in

scheduling, then Plaintiff would likely have a deliberate indifference claim against Knight, as he

would have "been aware of or at least must have strongly suspected the substantial risks posed

by the untreated [m]olars," but failed to act for nearly a year. *Formica*, 739 F. App'x at 758.

As to Allen, Defendants suggest that, because the "only allegations against her relate to

her responses to his informal complaints," she lacks the requisite level of awareness to be liable

for a claim of deliberate indifference. (Mem. at 6.) This, of course, ignores that the Fourth

Circuit has allowed deliberate indifference claims to succeed at the summary-judgment stage

against dental assistants like Allen when the assistant was involved with "respond[ing] to [the

plaintiff's] multiple inquiries relating to the Molar," and held some responsibility for scheduling

appointments. *Formica*, 739 F. App'x at 757.

Here, Plaintiff alleges that Allen played exactly those roles, and her responses to

Plaintiff's grievances confirm as much. She confirms that she was employed at the relevant

dental provider as a dental assistant. (Allen Aff. ¶ 1.) And, as a dental assistant, she apparently

has the responsibility to schedule appointments, given that she wrote to Plaintiff that "you will be

scheduled for your dental appointment to have your cavities addressed," after he reached out to

dental services in August of 2022. (Pl. Resp. Exh. A at 1.)  Importantly, this was nearly a year after he was initially diagnosed with cavities by Dr. Holland and nine months after "Dr. M" wrote in their provider notes that "[Plaintiff] will be scheduled for restoration." (Mem. Exh. 3 at 1.)  Allen continued to respond to Plaintiff's grievance letters, wherein she described what occurred at his various appointments, the responses of the dentist and articulated when and whether he would receive a follow-up appointment.  (Pl. Resp. Exhs. A, D, I, J, L, Q.)  Notably, in one such letter, Allen remarked on Plaintiff's visit with Dr. Holland, indicating that she worked with that dentist and knew the substance of his appointments, too.  (Compl. Exh. Q at 1.)  Altogether, when viewing this evidence in the light most favorable to Plaintiff, these responses permit the Court to infer that Allen had an informed perspective of Plaintiff's objectively serious medical need dating at least as far back as Dr. Holland's initial diagnosis of Plaintiff's cavities in August of 2021.

This comports with the Fourth Circuit's holding in *Formica*, where it found that a dental assistant manifested deliberate indifference, because they knew that a prisoner had cavities that needed to be addressed but failed to schedule an appointment to address that need.  Like the dental assistant in *Formica*, Allen "was closely involved in [Plaintiff]'s dental treatment process," as both she and the *Formica* dental assistant scheduled dental appointments and responded to patient inquiries regarding to their dental concerns.  739 F. App'x  at 757.  And, when drawing the facts in the light most favorable to Plaintiff, the Court can also infer that Allen — a dental assistant — "must have strongly suspected the substantial risks posed by" not scheduling Plaintiff for a filling after either his August 2021 or November 2021 appointments.

When a medical professional, like Defendant Allen, knows of a serious medical need, "the Eighth Amendment requires reasonable action." *Farmer*, 511 U.S. at 844.  However,

reasonable action, like scheduling an appointment to address Plaintiff's cavities, was not taken. Therefore, at this stage and on the record before the Court, as was the case in *Formica*, there exists a material dispute about whether Allen (1) strongly suspected the risks posed by Plaintiff's cavities and (2) whether she bears responsibility for not scheduling an appointment to have them filled during the 12-month period of delay. Given these triable issues of fact, the Court declines to grant summary judgment in Defendant Allen's favor.

## IV.    CONCLUSION

In August of 2021, Plaintiff was diagnosed with two cavities. A dentist at GCC confirmed this much in November of 2021. Yet, nobody at GCC scheduled Plaintiff to have those cavities — which constitute an objectively serious medical need — addressed until August of 2022. An unjustified one-year delay in administering a treatment as routine as filling cavities is, as the Fourth Circuit has recognized, "simply intolerable." *Formica*, 739 F. App'x at 758. On the record before it, however, the Court cannot infer that Knight had the requisite level of awareness or involvement with scheduling matters to be considered as having acted in a deliberately indifferent manner to Plaintiff's objectively serious medical need. However, facts could be developed that do show as much. As to Allen, by contrast, Plaintiff has demonstrated that there exists a genuine issue of material fact as to whether she: (1) knew of the risks posed by Plaintiff's dental needs; and (2) bears responsibility for failing to schedule Plaintiff to have those cavities addressed.

As such, the Court will GRANT Defendants' Motion as to the deliberate indifference claim against Knight brought pursuant to § 1983. However, because the Complaint does not suffer from fundamental deficiencies, Plaintiff's claim against Defendant Knight will be DISMISSED WITHOUT PREJUDICE. Plaintiff will have twenty-one (21) days from the date

of this Memorandum Opinion and accompanying Order to amend his Complaint with further factual support regarding Knight's role in scheduling Plaintiff's dental care.[8] As to Allen, Plaintiff has demonstrated that a genuine issue of material fact exists, particularly when drawing factual inferences in his favor and construing his *Pro Se* Complaint liberally.

Thus, the Court will DENY Defendants' Motion as to the deliberate indifference claim brought against Defendant Allen under § 1983.  However, because Plaintiff only brings a claim for damages against Defendants, his official capacity claim against Defendants will be DISMISSED WITH PREJUDICE. *Will*, 491 U.S. at 70.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record and send a copy to Plaintiff at his address of record.

                                        _____/s/_____
                                        David J. Novak
                                        United States District Judge

Richmond, Virginia
Dated: August 5, 2024

---

8       Plaintiff may also take this opportunity to add other defendants that may be liable under 42 U.S.C. § 1983.